## CHENOWETH et al. v. NORDAN & MORRIS.

### No. 11283.

Court of Civil Appeals of Texas.
San Antonio.

April 28, 1943.

Rehearing Denied May 19, 1943.

Neil E. Beaton and W. H. Kennon, both of San Antonio, for appellants.

Swearingen & Miller, of San Antonio, for appellees.

MURRAY, Justice.

This suit was instituted by L. V. Chenoweth and J. E. Johnson against L. A. Nordan and Mrs. John G. Morris, composing the firm of Nordan and Morris, seeking an injunction restraining defendant from discriminating against the plaintiffs in purchasing natural gas from two wells owned by plaintiffs and located in the Lopena Field, in Zapata County, Texas. The suit was also for damages.

The defendants directed certain exceptions to plaintiffs' petition which were sustained by the court. Upon plaintiffs' refusal to amend, a judgment of dismissal was entered, from which plaintiffs have prosecuted this appeal.

Nordan and Morris were the owners of a collecting pipe line which collected the gas from some twenty-one gas wells located in the Lopena Field and delivered it to the main pipe line of the United Gas Company. The plaintiffs, Chenoweth and

Johnson, were the joint owners of two of these wells. They entered into two contracts, one covering each of the two wells, whereby defendants agreed to purchase the natural gas from these wells. Plaintiffs contend that these contracts expressly provide that the gas was to be taken equally on a per-well basis from the twenty-one wells in the field, while the defendants contend that the contracts expressly provide that the gas is to be taken upon a pro rata basis, according to the acreage held by each producer in the field. Plaintiffs further contend that Rule 37 fixed the effective drainage area in the Lopena Field at twenty acres per well, and hence that the defendants are required by the rules and regulations of the Railroad Commission to take gas from the field on a per-well basis, and, lastly, that if plaintiffs are wrong in these first two propositions, the court should have allowed them, nevertheless, to go to the jury on the remaining fact issues raised in their pleadings, with reference to what would have been an equitable and ratable taking of gas from the several wells located in the Lopena Field.

We shall discuss these propositions in the order stated. The language contained in the contracts which must be here construed is as follows:

"Seller (plaintiffs) * * * hereby sells and agrees to * * * deliver to buyer (defendants) * * * all of the merchantable gas which may be produced from all gas wells now drilled or which may hereafter be drilled on the * * * described premises during the term of the present leasehold * * * thereon, or any * * * extension thereof * * *.

"Buyer shall not be under any obligation to take all or any specified portion of the gas * * * during any defined or specified time; but buyer shall endeavor to take gas from the herein described lands and leaseholds in the same equitable or ratable proportions that it takes gas from the lands and leaseholds of others from whom buyer is now purchasing and/or may hereafter purchase gas in the gas field in which said premises of seller are located, including any lands which Nordan & Morris * * * might at any time own. It is recognized and agreed that varying operating mechanical and physical conditions will make it impossible for buyer to take gas from each and every well in exact ratable pro-

portions. Buyer does agree, however, that it will, insofar as varying facts, circumstances and conditions will justify and permit, take an equitable or ratable withdrawal of gas from seller's lands and leaseholds * * * as compared with the withdrawals from the lands and leaseholds of others from whom buyer is now purchasing and/or may hereafter purchase gas in the gas field * * * including any lands which Nordan & Morris * * * might at any time own * * *.

"This contract is subject to all present and future valid orders, rules and regulations of any regulatory body of the Federal Government and the State in which these premises are situated."

■ Appellants contend, in effect, that the word ratable means equal, while appellees contend that it means something quite different. It is apparent that if the word ratable means equal, then defendants have contracted to take gas in equal proportions from each well, and should be required to carry out the terms of their contract, but if the word has a different meaning then the very basis of appellants' suit falls. We conclude that ratable does not mean equal, but rather pro rata, according to some rule or standard to be established.

In Brombacher v. Berking, 56 N.J.Eq. 251, 39 A. 134, 135, it is said: "'Pro rata' means according to a measure which fixes proportions. It has no meaning unless referable to some rule or standard. * * * The word 'ratably' is, of course, equivalent to the words 'pro rata'."

In Robinson v. Booth, etc., Co., 94 Colo. 515, 31 P.2d 487, it is said: "'Pro rata' means 'according to a measure which fixes proportions' or 'according to a certain rate, percentage proportion,' and never means equality or equal division, but implies unequal division, as between different persons." See, also, Words and Phrases, Perm.Ed., vol. 36, p. 109.

■ Appellants next contend that the necessary legal effect of the applicable spacing rule and drilling pattern was to define as a matter of law the efficient drainage area around wells in the Lopena Field to be not in excess of twenty acres. We overrule this contention. The drilling pattern for wells and the efficient drainage area are two very different things.

388

The Railroad Commission is given authority to regulate the spacing of wells by articles 6014 and 6029, Vernon's Ann.Civ. Stats. Article 6029 provides in part as follows: "The Commission shall make and enforce rules * * * for the drilling of wells and * * * to require wells to be drilled * * * in such manner as to prevent injury to adjoining property."

By an entirely different statute, Art. 6008, § 14, Vernon's Annotated Civ.Stats., the Legislature has directed that: "The Commission shall allocate, distribute or apportion the total allowable production from such field among the various gas wells * * * on a reasonable basis, and as provided in Section 13."

Section 13 reads in part as follows: " * * * take into account the size of the tract * * * upon which such gas well * * * [is] located; the relation between the daily producing capacity of each gas well, and the aggregate daily capacity of all gas wells * * * in the * * * reservoir * * * and all other factors which are pertinent; provided that the Commission shall not take into account the size of the tract * * * in excess of the efficient drainage area of such * * * wells * * *. In ascertaining the drainage area of a well the Commission shall take into account such factors as are reflected in the productive capacity of a gas well, including formation pressure, the permeability and porosity of the producing formation, and the well bore's structural position, together with all other factors taken into account by a * * * prudent operator."

Appellants next contend that in any event they were entitled to go to the jury upon the fact issue as to whether or not the proration which appellees were practicing in the Lopena Gas Field was equitable and ratable between the nine producers in that field. Appellees had applied to the Railroad Commission for a proration order governing Lopena Field, but the Commission had dismissed their application. They had then decided upon a proration of their own. They took ¼th of the gas on a per-well basis and ¾ths of the gas on an acreage basis. If appellants are dissatisfied with the proration which appellees are enforcing in the Lopena Field the proper place to secure a hearing on that matter is before the Railroad Commission, and should the Railroad Commission again re-

fuse to hear such matter they could then resort to the District Court of Travis County, either by appeal or by an application for a mandamus. The Railroad Commission has been given exclusive original jurisdiction to fix proration for natural gas fields in this State. Art. 6008, §§ 10, and 24; Art. 6049c, §§ 5, 7 and 8; Art. 6053, Vernon's Ann.Civ.Stats.; Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73; Humble Oil & Refining Co. v. Potter, Tex.Civ.App., 143 S.W.2d 135; Spear v. Humble Oil & Refining Company, Tex.Civ.App., 139 S.W.2d 212; Railroad Commission of Texas v. Brown Express, Tex.Civ.App., 106 S.W.2d 327; Magnolia Petroleum Co. v. New Process Production Co., 129 Tex. 617, 104 S.W.2d 1106; Box v. Newsom, Tex.Civ.App., 43 S.W.2d 981; Turner v. Bennett, Tex.Civ. App., 108 S.W.2d 967; State Board v. Comer, Tex.Civ.App., 109 S.W.2d 1012; Terrell v. Community Natural Gas Co., Tex.Civ.App., 117 S.W.2d 838.

The trial judge did not err in sustaining the exceptions to appellants' petition, and, upon appellants' refusal to amend, the suit was properly dismissed. Accordingly, the judgment of dismissal is affirmed.